UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re

                                       Chapter 7

Glenn R. Mazzella *fdba*
Glenn Marine Family Boating Center Ltd.
*fdba* Worldwide Yacht Corp.,

                                       Case No.: 09-78449-478

                 Debtor.
--------------------------------------------------------x


# MEMORANDUM DECISION AND ORDER


*Appearances:*


Wong & Fleming
*Attorneys for GE Commercial Distribution Finance Corp.*
By: Jonathan R. Miller, Esq.
821 Alexander Road, Suite 150
P.O. Box 3663
Princeton, New Jersey 08543-3663


Pryor & Mandelup, LLP
*Attorneys for Debtor*
By: John H. Hall, Jr., Esq.
675 Old Country Road
Westbury, New York 11590


Honorable Dorothy T. Eisenberg, United States Bankruptcy Judge

Before the Court is the motion by creditor, GE Commercial Distribution Finance Corp. ("CDF") seeking a dismissal of the Debtor's Chapter 7 bankruptcy case as a bad faith filing pursuant to 11 U.S.C. § 707(a). This Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157(b)(2)(A). The following constitutes the Court's finding of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

<u>FACTS</u>

The individual Debtor has been in the boating industry for more than 20 years. He was the president of Glenn Marine Family Boating Center, Ltd. ("Glenn Marine"), a boat dealership which has ceased operations. The Debtor also did business through an entity named Worldwide Yacht Corp., in which he had an ownership interest. Worldwide Yacht Corp. was the sole dealer/distributor of Windy boats in the United States. The employees, officers, and operating facilities of Glenn Marine and Worldwide Yacht Corp. were the same.

Glenn Marine and CDF, or a predecessor entity purchased by CDF, entered into an inventory financing agreement on or around October 16, 2000. Under the inventory financing agreement and related agreements, CDF obtained a security interest in all of Glenn Marine's assets in consideration of CDF providing inventory financing to Glenn Marine. The Debtor and his wife, Barbara Mazzella ("Barbara"), executed personal guaranties to CDF regarding the payment of all obligations and liabilities of Glenn Marine to CDF. Glenn Marine and the Mazzellas experienced financial difficulties in 2006 to 2007 in part due to the declining economic environment. In 2007, CDF performed an audit and discovered that Glenn Marine had sold some of its collateral without remitting payment to CDF and demanded payment plus unpaid interest and charges. These sales are known as "sales out of trust. " Glenn Marine and

1

the Mazzellas defaulted on their obligations to CDF and did not cure the default.

On August 7, 2007, CDF commenced a replevin action in the United States District Court for the Eastern District of New York (the "District Court") seeking an order of seizure as to its collateral. CDF's request was granted and CDF was able to seize the new/floor planned collateral and any determination as to CDF's rights in any other property of Glenn Marine would be subject to an arbitration proceeding as set forth under the various inventory financing and security agreements between the parties. On April 16, 2008, a consent arbitration award was entered against Glenn Marine and the Mazzellas in the sum of $1,092,120.06 plus interest. CDF then commenced an action in District Court against the Mazzellas and Glenn Marine to confirm the arbitration award. The Mazzellas and Glenn Marine did not file an answer in the District Court action and on August 28, 2008, the District Court entered a default judgment against them in the sum of $1,092,120.06 plus interest (the "Judgment").

In May of 2008, a few weeks after the arbitration award was entered against the Debtor, the Debtor's 80 year old mother set up RMCL, Inc. to allow the Debtor to continue to sell boats through a new entity. RMCL operated under the trade name of Pre-Ray Boats. Although RMCL was owned by the Debtor's mother, it was the Debtor who operated RMCL, interacted with customers and signed the tax returns. RMCL was engaged in the boat brokerage business. RMCL found buyers for existing boat owners wishing to sell their used boats and received a commission for each sale.

RMCL had a checking account in which the Debtor co-mingled the funds he received from the operation of RMCL's business and monies he received for his personal use, such as proceeds from life insurance policies, and gifts and loans from his family and friends. The

Debtor testified that he used RMCL's checking account for his personal funds because CDF would put a freeze on bank accounts opened in the Debtor's own name and would restrict his access to funds in those accounts. The Debtor would pay RMCL's business expenses and many of his personal expenses with funds from RMCL's account. Some of these personal expenses included, but were not limited to, obligations on his personal credit card issued by American Express, telephone bills for his and the children's cellular phones, medical expenses, utilities, household items, mortgage payments for his residence, cable television and internet access for his home, car lease payments, a vacation, and child care expenses. Not all the personal expenses paid out from RMCL's checking account were clearly identified as such in RMCL's books and records. As a result, while RMCL exhibited operating losses on its federal tax returns for the 2008 and 2009 tax years, it is uncertain whether these losses were due to RMCL's actual operating costs exceeding its revenues or whether including the Debtor's personal expenses in RMCL's business expenses caused RMCL to show a loss. At some point CDF also placed a freeze on RMCL's bank account.

CDF has been attempting to collect on its Judgment to no avail. Neither the Mazzellas nor Glenn Marine made any payment towards the Judgment. Glenn Marine ceased business operations. CDF served information subpoenas on the Debtor on October 14, 2008, December 5, 2008, December 17, 2008 and on September 15, 2009 seeking information about the Debtor's income and assets, but the Debtor did not respond to these subpoenas when he received them.

Debtor testified that he did not respond to these information subpoenas in part because he did not have any funds to pay an attorney to respond to the information subpoenas and was reluctant to complete the subpoenas without the advice of legal counsel and that his wife's health

began to deteriorate in July of 2008.  Barbara had previously been diagnosed with cancer in

2004.  The Debtor had to take care of their two minor children during Barbara's illness and

continue to earn income.  Barbara died in December 2008.  Barbara had a life insurance policy of

approximately $238,000.  After her death, the insurance proceeds were deposited into two trust

bank accounts which the Debtor opened for each child.  The Debtor is the executor of Barbara's

estate and the trustee of the two bank accounts.  The Debtor also used funds from these bank

accounts to pay for his and the children's living expenses.  CDF also placed a freeze on these

accounts prepetition in August of 2009.

On October 19, 2009, CDF filed a motion before the District Court seeking to hold the

Debtor in contempt for his failure to respond to CDF's interrogatories and information

subpoenas.  Debtor retained bankruptcy counsel on October 20, 2009 and filed this chapter 7

case on November 4, 2009 (the "Petition Date"), a few days prior to the hearing on CDF's

motion for contempt.  The District Court declined to hold the Debtor in contempt in light of the

automatic stay as a result of the bankruptcy filing.  However, the District Court did direct the

debtor to provide information in his possession regarding Glenn Marine and Barbara's estate.  In

December 2009, on consent of the parties, the District Court action was removed to this Court.

Debtor lists in his bankruptcy schedules a 2001 Chrysler Sebring with 95,000 miles, a

2008 Cadillac DTS with 35,000 miles and a 1999 Ford 350 Econoline van with 200,000 miles.

In addition, the Debtor listed a life insurance policy with Massachusetts Mutual Life Insurance

Company ("Mass Mutual").  The Debtor listed a checking account with JP Mortgage Chase

Bank with approximately $262 around the Petition Date.  On May 28, 2010, the Debtor amended

his bankruptcy schedules to include a checking account with Bank of Smithtown containing

approximately $1,000 as of the Petition Date which the Debtor stated had been frozen by CDF prepetition.

The Debtor's Schedule F lists $1,619,049 in general unsecured claims.  CDF is the Debtor's largest unsecured creditor with its Judgment of $1,092,120.06.  Aside from CDF, there is a $300,750 judgment in favor of Textron Financial Corp, and four other judgments of unknown amounts scheduled.  The Debtor also listed several lawsuits pending in state court. Most of the remainder of the Debtor's general unsecured claims consist of credit card debt and a $12,000 loan from Mass Mutual against the Debtor's insurance policy.

Debtor listed monthly income of $4,821 as of the Petition Date of which $2,516 is from social security for his children, $680 from RMCL which he used to pay for his lease of the Cadillac and $1,625 in rental income received from Barbara's property, which has been foreclosed upon and sold earlier this year.  The Debtor stated that he did not list any income from commissions relating to RMCL as the income was almost nonexistent.  He listed monthly expenses of $9,917 on his bankruptcy schedules which would result in a monthly deficit of $5,096 as of the Petition Date.

In addition to a life insurance policy, the Debtor also has a disability income insurance policy with Mass Mutual both of which had lapsed prepetition.  The Debtor was anxious to get the policies reinstated and claims to having been coached by his insurance broker to have his reinstatement applications to the insurance company appear generally consistent with his initial applications.  The Debtor submitted information in regard to his disability insurance reinstatement application dated September 11, 2008 indicating that he had actual earned income of $46,000 for the prior calendar year (i.e., 2007), unearned income of $1,000 and a financial net

worth of $1,000,000.  In May of 2009, approximately 6 months prior to the Petition Date, the

Debtor submitted an application to Mass Mutual to reinstate his life insurance policy in which he

represented that he had annual income of $100,000 and a financial net worth of $250,000.  This

in fact was not an accurate statement.  In fact, the Debtor misstated his income and net worth.  If

challenged, the Debtor may have a problem vis-a-vis these insurance policies.  Debtor testified

that he had stated that he had $100,000 of annual income because he was optimistic and was

hopeful that he could sell a lot of boats.  However, his actual income consisted of his children's

social security payments, the rental income, insurance cash values, his savings and loans from

relatives.  In addition, the Debtor used his children's trust funds to pay for their health,

education, maintenance and support and some other expenses until CDF placed a freeze on the

trust accounts prepetition.  On April 28, 2010, the Court entered an order in the related

proceeding removed from the District Court directing that CDF remove any restraint on the trust

funds.

      After filing for bankruptcy, Debtor formed another entity, G. Richard M. Associates, Inc.,

in order to continue the used boats brokerage business on a part-time basis.  The Debtor

continues to use the Pre-Ray trade name to conduct business.  Debtor currently works about 15

hours a week for Pre-Ray and 35 hours a week for Certa-Cote Inc., another business he created

post-petition which coats gas pipes and water mains underground.  The Debtor is the only

employee of Certa-Cote and uses the Ford Econoline van in this business.

      The Debtor plays golf on average twice a month at a country club where he pays for the

usage fees.  The Debtor states that he did not pay for membership at the country club.  He

usually goes out with his children to eat one to two nights a week.  The Debtor has a hot tub in

his backyard which he pays to have someone maintain.

The time for creditors to object to the Debtor's discharge or dischargeability of debt expired on February 8, 2010. The Trustee's time to object to discharge has been extended upon consent to December 23, 2010, without prejudice for further adjournments. CDF has elected to seek dismissal of the Debtor's case rather than to bar his discharge under 11 U.S.C. § 727 or deny the Debtor the dischargeability of its claim under 11 U.S.C. § 523.

On February 8, 2010, CDF filed the pending motion to dismiss this chapter 7 case (the "Motion to Dismiss"). The Debtor filed opposition to the Motion to Dismiss. During this time, the Debtor also responded to the CDF's outstanding information subpoenas that were served upon the Debtor prepetition in the District Court action. Evidentiary hearings on the Motion to Dismiss were conducted on two separate days.

## DISCUSSION

Under section 707(a) of the Bankruptcy Code, the court may dismiss a case under chapter 7 "after notice and a hearing only for cause . . . ." 11 U.S.C. § 707(a). Although § 707(a) does not list bad faith as an enumerated cause for dismissal, courts have been divided over whether bad faith can be a basis for dismissal for cause. The Third and Sixth Circuits have held that a bankruptcy court may dismiss a petition for cause under § 707(a) if there is a lack of good faith. *See In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000); *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991). The court in *Zick* noted that "good faith and candor are necessary prerequisites to obtaining a fresh start" and that bankruptcy protection was not intended to provide persons with a "head start" or to assist those who are attempting to preserve a comfortable standard of living at the expense of their creditors. 931 F.2d at 1129.

7

However, the Eighth and Ninth Circuits held that bad faith should generally not be a basis for dismissal under § 707(a). The Eight Circuit in *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994), noted that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7." The court concluded that dismissal under § 707(a) for bad faith should be limited to extreme misconduct that was not worthy of bankruptcy protection, such as using bankruptcy 'as a "scorched earth" tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction.' *Id. (*citing *In re Khan*, 172 B.R. 613, 624-625 (Bankr. D. Minn. 1994)). *See also In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (agreeing with the Eighth Circuit and finding that 'bad faith as a general proposition does not provide "cause" to dismiss a Chapter 7 petition under § 707(a)').

While the Second Circuit has yet to rule on the issue of whether bad faith constitutes cause for dismissal under § 707(a), courts in this Circuit have followed *In re Zick* in dismissing cases where there is an absence of good faith. *In re O'Brien*, 328 B.R. 669 (Bankr. W.D.N.Y. 2005); *In re Blumenberg*, 263 B.R. 704, 713-714 (Bankr. E.D.N.Y. 2001); *In re Griffieth*, 209 B.R. 823, 827-828 (Bankr. N.D.N.Y. 1996). As the court in *O'Brien* noted, bankruptcy protection is a privilege and not a right and "Chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start." 328 B.R. at 674. Moreover, bankruptcy courts 'routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause".' *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373 (2007) (stating that the practical effect of a dismissal of an individual's Chapter 13 case due to prepetition bad faith conduct is tantamount to a ruling that the individual is not an "honest but unfortunate debtor" that the bankruptcy laws were enacted to protect.) *See also*, *Grogan v. Garner*, 498 U.S.

8

279, 286-287 (1991) (stating that the fresh start provided by the Bankruptcy Code is intended for the "honest but unfortunate debtor"); *In re Eddy*, 288 B.R. 500 504 (Bankr. E.D. Tenn. 2002) (stating that the concept of good faith "is implicit in the basic purpose of bankruptcy relief to relieve the honest but unfortunate debtor of his indebtedness....")

In determining whether there is a lack of good faith in a debtor's bankruptcy filing, an inquiry into the totality of the circumstances must be conducted. *In re Blumenberg*, 263 B.R. at 715; *In re Griffieth*, 209 B.R. at 827. As the Sixth Circuit has cautioned, dismissal based on bad faith must be undertaken on an *ad hoc* basis and should be confined to those "egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *In re Zick*, 931 F2d. at 1129.

Courts have considered the following factors to be relevant to such an inquiry of bad faith:

> (1) The debtor's manipulations having the effect of frustrating one particular creditor;
> (2) The absence of an attempt to pay creditors;
> (3) The debtor's failure to make significant lifestyle changes;
> (4) The debtor has sufficient resources to pay substantial portion of debts;
> (5) The debtor inflates expenses to disguise financial well-being, and
> (6) The debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors.

*Blumenberg*, 263 B.R. at 715 *(citing, In re Griffieth*, 209 B.R. at 827). Some courts also considered whether the following additional factors exist in determining bad faith:

> (1) The debtor reduced his creditors to a single creditor in the months prior to the filing of the petition;
> (2) The debtor filed in response to a judgment, pending litigation or collection action;

9

    (3) There is an intent to avoid a large single debt;
    (4) The unfairness of the use of Chapter 7;
    (5) The debtor transferred assets;
    (6) The debtor is paying debts to insiders;
    (7) The debtor failed to make candid and full disclosure;
    (8) The debts are modest in relation to assets and income; and
    (9) There are multiple bankruptcy filings or other procedural "gymnastics".

*In re O'Brien*, 328 B.R. at 675; *In re Eddy*, 288 B.R. at 505 (*citing*, *In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995). While the presence of one of these factors alone will not be sufficient to support a dismissal for cause, a finding of a combination of factors may suffice. *In re Eddy*, 288 B.R. at 505; *In re Spagnolia*, 199 B.R. at 365.

    In this case, CDF is the Debtor's largest unsecured creditor with a judgment of approximately $1,092,120 and the Debtor has not made any payment to CDF on its judgment. The Debtor also failed to respond prepetition to CDF's information subpoenas regarding disclosure of his assets for several months leading up to the bankruptcy filing. It is clear that the Debtor filed for Chapter 7 protection to stay CDF's efforts in the District Court seeking to collect on its Judgment against him personally and in response to CDF's motion for contempt.

    However, the fact that the Debtor filed for bankruptcy in response to pending litigation without more additional evidence of misconduct is not enough to dismiss this case for cause under 11 U.S.C. § 707(a). CDF has not shown that it has suffered any prejudice or unfairness by the Debtor's bankruptcy filing beyond what would be experienced by any other creditor who is also subject to the automatic stay. *In re Aiello*, 428 B.R. 296, 300 (Bankr. E.D.N.Y. 2010).

    It is apparent that the Debtor has other financial difficulties other than just his inability to pay his debt to CDF. Debtor's boat brokerage business suffered before CDF obtained its judgment as the economy worsened during the last several years. Despite the Debtor's hopes

that the boat brokerage business would come back, the Debtor has been unable to rely solely on this line of business to support himself and his family. The Debtor earns additional income from his Certa-Cote business and uses his children's trust funds to pay for household living expenses. Other than the Debtor's residence which has minimal nonexempt equity and his vehicles, the Debtor has not been shown to have any additional meaningful asset. Indeed, a review of the Debtor's bankruptcy schedules and Statement of Financial Affairs shows that the Debtor has other judgments against him, including a $300,750 judgment in favor of Textron Financial Corp., and several other lawsuits that were pending in state court on the Petition Date. The Debtor has other general unsecured creditors with respect to credit card debts and a priority claim by the State of New York for unpaid workers compensation taxes. CDF has not shown that the Debtor manipulated his financial situation to reduce his creditors to a single creditor prepetition or that he was paying most of his debt obligations with the exception of CDF.

The Debtor had his mother incorporate RMCL under her name as a means for him to earn income and open a bank account under RMCL. While the Debtor's commingling of the funds in RMCL's bank account hindered CDF's attempt to collect on its judgment, CDF has not shown that the Debtor had the financial ability to significantly pay down CDF's Judgment or was trying to use the RMCL account to conceal assets from CDF in order to avoid payment on the judgment. Indeed, CDF subsequently discovered the account and placed a restraint on the account. The Court finds the Debtor's explanation that he undertook such actions after continuous actions by CDF to freeze his bank accounts made it difficult for him to pay for business and personal expenses in order to have a means to pay his ongoing living expense bills to be reasonable although not necessarily appropriate.

11

Although the Debtor failed to disclose his account with the Bank of Smithtown, CDF has not shown that the Debtor's failure to disclose this bank account was motivated by an intention to deprive his creditors of this asset. CDF had the Bank of Smithtown account restrained and the Debtor did not have any access to the account and could not have made use of the funds in the account. If there was any prejudice to the Debtor's bankruptcy estate, it would stem from the estate's inability to access any nonexempt funds in the Bank of Smithtown account or any other account because of CDF's restraint on those accounts.

While it appears that the Debtor overstated his annual income and assets in his insurance reinstatement applications, any effect of such overstatements with respect to the availability of coverage or the allowance of any future claim against these insurance policies presumably will be addressed within the context of the policies and the insurer. CDF has not shown that it or any other creditor relied upon any information or misstatements in these insurance restatement applications regarding any extension of credit to the Debtor or Glenn Marine. The only creditor shown thus far that would have relied on the misstatements in these insurance statement applications would be Mass Mutual and it has not filed an objection to the dischargeability of any claim it has against the Debtor or the Debtor's discharge.

Based upon the Debtors' bankruptcy schedules filed with the Court, it does not appear that the Debtor has much in the way of nonexempt assets nor did the Statement of Financial Affairs show any transfer of property. Even if the Court were to exclude the car payments on the Cadillac, the Debtor's monthly expenses exceed his income by several thousand dollars. Indeed, the Debtor relied upon the insurance proceeds held in trust for his children to help pay for some of the living and household expenses. There is no evidence that the Debtor has sufficient funds

12

to meet his debt obligations, including that owed to CDF.  An inability to pay one's debts is an obvious reason for filing for Chapter 7 and is one of the purposes of allowing debtors a fresh start under the Bankruptcy Code.

It does not appear that the Debtor made adjustments to his lifestyle in terms of reducing his expenses to reflect his reduction in income and was trying to maintain an image of a successful businessman.  While maintaining a hot tub and paying for a game of golf may appear to be luxurious and the Court questions the Debtor's judgment in failing to reduce his expenses significantly in light of his reduction of income, CDF has not presented sufficient evidence to show that the Debtor's lifestyle rises to the level of egregiousness that would warrant a dismissal of this Chapter 7 case.

In addition, there is no evidence presented that the Debtor is trying to get a "head start" at the expense of a creditor by deliberately incurring debt obligations prior to his bankruptcy filing with the intention of obtaining a discharge of those debts while retaining the benefit of any income, goods and/or services received.  Neither has CDF proven that the Debtor has concealed assets of the estate or that his acts are so egregious as to warrant the dismissal of his Chapter 7 filing.

The Debtor has submitted to the jurisdiction of the bankruptcy court and is required to cooperate with the Trustee in the Trustee's efforts to administer the Chapter 7 estate.  If there was any wrongdoing on the Debtor's part with respect to the incurrence of a debt obligation to a creditor, other provisions of the Bankruptcy Code provide the Trustee and creditors with rights and remedies without dismissal of the bankruptcy case.  Meanwhile, the Trustee has not concluded his investigation of the Debtor's assets and liabilities.  If the Trustee discovers any

13

evidence that would warrant an objection to the debtor's discharge or a dismissal of the bankruptcy case, then the Court will entertain it when the appropriate motion is brought before it. Otherwise, based upon the evidence presented pursuant to this Motion to Dismiss, the Court cannot find that the Debtor's bankruptcy filing rises to the level of bad faith that would warrant a dismissal of the Chapter 7 case for cause at this time.

CDF has not sought any remedy as to the action that was removed from the District Court to this Court. Therefore, this decision is based solely on CDF's Motion to Dismiss this Chapter 7 case.

<u>CONCLUSION</u>

Based upon the foregoing, CDF's Motion to Dismiss this Chapter 7 case is denied without prejudice.

So ordered.



Dated: **Central Islip, New York**
       **December 6, 2010**

14

**Dorothy Eisenberg**
**United States Bankruptcy Judge**